RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0253p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

MICHAEL THOMPSON,

    *Petitioner-Appellant,*

  *v.*              No. 15-1435

LLOYD RAPELJE, Warden,

    *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-10781—David M. Lawson, District Judge.

Argued: September 27, 2016

Decided and Filed: October 11, 2016

Before: ROGERS, SUTTON, and COOK, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Edmund G. LaCour, Jr., BANCROFT PLLC, Washington, D.C., for Appellant. Scott R. Shimkus, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Edmund G. LaCour, Jr., George W. Hicks, Jr., BANCROFT PLLC, Washington, D.C., for Appellant. Elizabeth Rivard, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

───────────────

## OPINION

───────────────

ROGERS, Circuit Judge. Michael Thompson was convicted on various counts of child abuse, including first-degree criminal sexual conduct, which carries a twenty-five year mandatory minimum sentence. At trial, the disputed question was whether Thompson digitally

penetrated the child.  In his opening statement, defense counsel promised that Thompson would testify and deny penetration, but counsel never called Thompson to testify.  Instead, counsel relied on Thompson's statements in a taped police interview to tell his side of the story.  After trial, Thompson asserted an ineffective-assistance-of-counsel claim based on defense counsel's broken promise, which the Michigan courts rejected.  The district court then denied Thompson's habeas petition based on the same claim, which Thompson now appeals.  The district court properly denied Thompson's habeas petition, because the state court reasonably concluded that defense counsel's error did not prejudice Thompson's defense.

The criminal charges in this case stemmed from three separate instances of Thompson's abusing the twelve-year-old daughter of Thompson's girlfriend, Ginger Huffman.  That conduct came to light in March 2008, when Huffman found nude pictures of her daughter on Thompson's camera.  Thompson admitted taking the photos to Huffman, who turned the camera over to the police.  That same day, the police interviewed Thompson, recording the interview on a videotape.  In the interview, Thompson admitted taking the sexually explicit pictures of the child and touching the child's breast and vagina.  Thompson denied, however, digitally penetrating the child.

Several days later, the child confirmed that Thompson had inappropriately touched her.  The confirmation came out during an examination with Dr. Gushurst, a pediatrician who specializes in child abuse.  During the examination, the child told Gushurst that Thompson "touched [her] under [her] pants" and that it hurt "a little bit."  When Gushurst did a more detailed examination and asked the child where Thompson had touched her, the child "pointed with her finger to the mons pubis," "the clitoris area," and "upper areas of the labia."  When Gushurst placed a swab inside the labia, the child said that she "wasn't sure" whether she had been touched there.

All of this led to five charges, including one count of first-degree criminal sexual conduct under Michigan Compiled Laws § 750.520b(1)(a), the crime at issue on this appeal.  A two-day trial took place in August 2008.  As the Michigan Court of Appeals noted on direct appeal, "[i]t [was] undisputed"—both on appeal and at trial—"that [the] defendant inappropriately touched the girl."  *People v. Thompson* (*Thompson I*), No. 287997, 2009 WL 4985244, at *1 (Mich. Ct.

App. Dec. 22, 2009). Rather, the chief question at trial was whether Thompson penetrated the child.

In defense counsel's opening statement at the beginning of trial, he made the promise that is the subject of this appeal:

> The defendant I believe is going to testify in this case. He's going to tell you—I know he's going to testify—he's going to tell you he did not commit criminal sexual conduct in first degree. He's going to tell you that he did not penetrate the girl's vagina with his finger. Now, how—how is this going to happen? Well, he's going to testify to that. He's going to make himself available for cross-examination on everything that happened by taking the stand. The prosecutor I'm sure will ask him a lot of questions about some of these other things. My point is he's going to testify that he did not digitally or use his finger to penetrate the vagina.
>
> . . . .
>
> . . . And if you'll just keep an open mind and listen to all the proofs before you make up your mind, and listen to the defendant testify and listen to the things that he's going to have to admit, but that he will adamantly deny that he ever penetrated this girl's vagina with his finger or any other part of his body.

The incriminating testimony about penetration in the prosecution's case came from Dr. Gushurst and the child herself. Dr. Gushusrt described her physical examination, and the child testified that Thompson's "finger went between" where she goes to the bathroom. She further testified that Thompson moved his finger along the outside of her vagina, between the "fleshy areas," and that the touching lasted minutes. The prosecution also showed the jury the forty-four minute recording of Thompson's police interview. After the prosecution's case, the defense rested without calling Thompson or anyone else to testify.

Before jury deliberations, the trial court instructed the jury: "Every defendant has the absolute right not to testify. When you decide this case you must not consider the fact that he did not testify. It must not affect your verdict in any way." The jury convicted Thompson on all counts. Thompson filed a motion for new trial in the state court, asserting an ineffective-assistance claim based on defense counsel's failure to call Thompson as a witness after promising the jury they would hear Thompson's live testimony. At an evidentiary hearing held on the motion, defense counsel established that the video interview was instrumental in his

decision not to put Thompson on the stand. When defense counsel made his opening statement, his "strategy . . . would have involved [Thompson] testifying." However, defense counsel also wanted to "keep [his] options open" until he saw the video's effect on the jury. Once the prosecution played the video at trial, counsel decided Thompson's statements in the video were more helpful to his defense than live testimony would have been, based on Thompson's state of mind and the jury's reaction to the video, particularly because live testimony would have subjected Thompson to cross examination.

Following the hearing, the state trial court denied Thompson's motion for a new trial. The court held that defense counsel's deviation from his initial plan to have Thompson testify was not deficient under *Strickland*. The court also held that, because Thompson was able to present his defense through the video evidence, defense counsel's performance did not prejudice the defense. The Michigan Court of Appeals affirmed this decision. *See Thompson I*, 2009 WL 4985244, at *1. The appellate court adopted the trial court's rationale about why defense counsel's conduct was not deficient. *See id.* The court also agreed there was no prejudice, but gave its own reasoning:

> The jury heard from [the] defendant by way of a video recording of a police interrogation, which counsel found to be superior to putting defendant on the stand. Given the evidence of guilt, the limited harm, if any, of the broken promise that defendant would testify, and given the court's instruction to the jury that it could not consider defendant's failure to take the stand in rendering its verdict, we find that defendant has not shown that there existed a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.

*Id.*

After exhausting his state-court remedies, Thompson filed a petition for writ of habeas corpus with the district court, asserting the same ineffective-assistance claim. The district court held that defense counsel's conduct *was* deficient, and that under 28 U.S.C. § 2254(d)(1), it was unreasonable for the state courts to conclude otherwise. *See Thompson v. Rapelje* (*Thompson II*), No. 12-10781, 2015 WL 1345250, at *14 (E.D. Mich. Mar. 25, 2015). Nonetheless, the district court upheld the Michigan Court of Appeals' decision as a reasonable application of *Strickland*'s prejudice prong. *See id.* at *15. The district court thus rejected Thompson's habeas petition, which he now appeals.

Thompson argues that defense counsel was objectively unreasonable by promising Thompson's testimony to the jury when counsel doubted whether he would call Thompson as a witness. Thompson relies on several court-of-appeals decisions, including a Sixth Circuit case, holding that similar conduct is deficient under *Strickland*. *See English v. Romanowski*, 602 F.3d 714, 728–29 (6th Cir. 2010); *U.S. ex rel. Hampton v. Leibach*, 347 F.3d 219 (7th Cir. 2003); *Ouber v. Guarino*, 293 F.3d 19 (1st Cir. 2002); *Anderson v. Butler*, 858 F.2d 16 (1st Cir. 1988). The district court accepted Thompson's argument and further held that the Michigan Court of Appeals' opposite conclusion was "an unreasonable application of[] clearly established Federal law." 28 U.S.C. § 2254(d)(1); *see Thompson II*, 2015 WL 1345250, at *14.

However, this court ultimately need not evaluate the reasonableness of the state court's deficiency decision, because assuming defense counsel's conduct was deficient, the Michigan Court of Appeals reasonably applied *Strickland*'s second prong when it decided that any error did not prejudice Thompson's defense. A successful ineffective-assistance claim requires the plaintiff to prove both deficient conduct and prejudice, *Strickland v. Washington*, 466 U.S. 668, 692 (1984), so the lack of prejudice in this case is dispositive. The prejudice issue was actually raised in and fully addressed by the state court, so AEDPA deference applies under 28 U.S.C. § 2254(d)(1). *See Thompson I*, 2009 WL 4985244, at *1. Therefore, the relevant question before this court is whether the state court reasonably decided "there [was no] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The answer is yes: the Michigan Court of Appeals reasonably concluded that counsel's failure to deliver Thompson's live testimony did not prejudice Thompson's defense for three reasons.

First, the state court recognized the importance of the trial court's instruction to the jury not to consider Thompson's failure to testify in reaching a verdict. *See Thompson I*, 2009 WL 4985244, at *1. Even considering that prejudice could have arisen from defense counsel's broken promise that Thompson would testify, the court's instruction was ameliorative. Juries presumptively follow the law. *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009); *see Strickland*, 466 U.S. at 694. It was therefore reasonable for the Michigan Court of Appeals to

conclude that the jury followed the instruction and that the instruction likely helped mitigate any damage arising from Thompson's failure to testify.

Second, the state court pointed to the evidence of penetration at trial. The child testified that Thompson's finger went between where she went to the bathroom, that Thompson moved his finger between the fleshy areas outside of her vagina, and that the touching lasted minutes. It is true that the evidence against Thompson was also uncertain at times—the child "wasn't sure" if Thompson's finger penetrated her labia—but there was evidence of guilt for the jury to rely on nonetheless.

Third, and most importantly, the state court noted that the jury was able to hear Thompson's side of the story, directly from Thompson, through the video interview. *See Thompson I*, 2009 WL 4985244, at *1. The video evidence distinguishes this case from the other court-of-appeals decisions Thompson cites. *See English*, 602 F.3d 714; *Leibach*, 347 F.3d 219; *Ouber*, 293 F.3d 19; *Anderson*, 858 F.2d 16. Thompson urges that, as in these parallel cases, defense counsel's broken promise inherently harmed Thompson's defense because, in a he-said–she-said battle with minimal evidence of guilt, anything that diminishes the defendant's credibility monumentally prejudices his defense. However, none of Thompson's parallel cases involved defense counsel substituting a video interview for live testimony. Thompson's guilt for first-degree criminal sexual conduct turned on whether he penetrated the child. Thompson denied penetration in the video, as he would have through live testimony. Thus there was little for Thompson to add to his defense through live testimony. Indeed, live testimony easily could have done more harm than good through impeachment on cross examination. In fact, defense counsel found Thompson's demeanor and statements in the video to be more effective than live testimony would have been. Thus, unlike in the other cited cases, here Thompson had his full say in this close, he-said–she-said matter. Regardless of whether this panel would have made the same determination of no prejudice on direct appeal, the district court correctly concluded that the application of *Strickland*'s prejudice prong by the Michigan Court of Appeals was reasonable.

The judgment of the district court is affirmed.