# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ERIK JOHN-PAUL WALEZAK,

Defendant-Appellant.

UNPUBLISHED
October 25, 2018

No. 338199
Macomb Circuit Court
LC No. 2015-004040-FC

Before: O'BRIEN, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions for three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration of victim under 13 years of age). The trial court sentenced defendant to concurrent terms of 35 to 60 years' imprisonment for each count. We affirm.

Defendant's convictions arise from his sexual abuse of SB, who was 10 years old when the abuse occurred and 11 years old at the time of trial. Defendant was good friends with SB's mother, and SB often visited defendant and spent the night at his home. At trial, SB described three separate instances of sexual penetration perpetrated by defendant when she was alone with defendant at his home. SB also described being exposed to pornography at defendant's house and finding a video of herself on defendant's cell phone that showed defendant sexually penetrating SB while she slept. SB had a younger sister, HB, whom defendant also sexually abused. At trial, under MCL 768.27a, HB testified as an other-acts witness, describing two acts of sexual penetration committed against her by defendant. Forensic analysis of defendant's cell phone revealed several photographs in which the girls appeared to be asleep and had their "shirts up and their pants down," exposing their chest or buttocks; in some of the images, a man was "masturbating over their heads" while the girls slept. In a confession to police, defendant admitted to sexually penetrating SB with his finger, and he also acknowledged that his phone contained images of him masturbating over HB while she slept. The jury convicted defendant as noted. Defendant now appeals as of right.

## I. OTHER ACTS EVIDENCE

Defendant argues on appeal that the trial court abused its discretion by admitting irrelevant and unduly prejudicial other-acts evidence relating to defendant's sexual penetration of

-1-

HB. Defendant contends that in the context of MCL 768.27a and MRE 403, HB's other-acts testimony was irrelevant, unreliable, and unfairly prejudicial. We disagree.

We review a trial court's admission of other-acts evidence for an abuse of discretion. *People v Kelly*, 317 Mich App 637, 643; 895 NW2d 230 (2016). "A trial court's decision is an abuse of discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). "[P]reliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it," are reviewed de novo. *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014).

In relevant part, MCL 768.27a(1) provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." "Under MCL 768.27a, evidence is relevant, and therefore admissible, when offered to show the defendant's propensity to commit the charged crime." *People v Solloway*, 316 Mich App 174, 193; 891 NW2d 255 (2016).[1] However, evidence otherwise admissible under MCL 768.27a may nevertheless be excluded under MRE 403. *People v Brown*, 294 Mich App 377, 386; 811 NW2d 531 (2011).

Under MRE 403, relevant evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. "[A]ll evidence elicited by the prosecution is presumably prejudicial to a defendant to some degree, and MRE 403 seeks to avoid *unfair* prejudice." *People v Smith*, 282 Mich App 191, 198; 772 NW2d 428 (2009). Importantly, when applying the MRE 403 balancing test in the context of MCL 768.27a, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012).

> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Id*. at 487-488.]

---

[1] On appeal, defendant focuses much of his argument on MRE 404(b) and the assertion that the prosecutor used HB's other-acts testimony for impermissible propensity purposes. However, to the extent defendant relies on MRE 404(b), his arguments regarding the impermissibility of propensity evidence and proper purpose fail because MCL 768.27a(1), which allows for propensity evidence, applies in this case, and thus, the prosecution had no obligation to justify the admission of HB's testimony under MRE 404(b). See *Solloway*, 316 Mich App at 192.

Considering HB's testimony under MCL 768.27a(1), the evidence was relevant. Evidence that defendant sexually penetrated HB on two occasions is relevant to establishing defendant's propensity to sexually assault young girls, making it more probable that he sexually penetrated SB. See *Solloway*, 316 Mich App at 193; *Watkins*, 491 Mich at 470. Also, HB's description of similar occurrences—namely, being sexually penetrated by defendant in his home—serves to bolster the credibility of SB's version of events. See *Solloway*, 316 Mich App at 193; *People v Mann*, 288 Mich App 114, 118; 792 NW2d 53 (2010). Although defendant claims that there is no similarity between his penetration of SB and his penetration of HB, defendant's conduct, in our judgment, demonstrates a pattern of exposing young girls to pornography, photographing them, and sexually penetrating them in the secrecy of his home when they were in his sole care. Overall, HB's testimony offered a larger context for defendant's conduct, which provided "a full and complete picture of a defendant's history" that tended "to shed light on the likelihood" that defendant sexually penetrated SB. See *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007). Accordingly, HB's other-acts evidence was relevant and generally admissible under MCL 768.27a(1).

As for MRE 403, the record shows that the trial court carefully weighed the *Watkins* factors, and we hold that the trial court did not abuse its discretion by concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. As noted, defendant's penetration of HB was highly probative of defendant's propensity to sexually assault young girls, and this propensity inference weighs in favor of the evidence's admission. *Watkins*, 491 Mich at 487. Considering the *Watkins* factors, there is no support for defendant's claim of unfair prejudice.

First, while the assaults were not identical, the acts were reasonably similar: defendant sexually penetrated both HB and SB in his home using both his finger and his penis. Second, the abuse of HB was not so remote in time as to necessitate exclusion of HB's other-acts evidence based on a lack of temporal proximity. See *Solloway*, 316 Mich App at 195 (concluding that a lapse of 12 years between other acts and charged conduct did not preclude admission of evidence). Third, HB was sexually assaulted on more than one occasion; and fourth, there is no evidence of intervening acts that weigh against the admission of the evidence. See *id*. Fifth, in terms of reliability, defendant claims that HB's testimony is unreliable because defendant was not convicted of sexually penetrating HB and there is no corroboration for her testimony. However, there is no requirement that other acts result in a conviction to merit admission at trial, see *Smith*, 282 Mich App at 202; *Kelly*, 317 Mich App at 646 n 3, and defendant provides no authority for the proposition that a lack of corroboration for HB's testimony necessarily makes her an unreliable witness, see generally *Solloway*, 316 Mich App at 195; MCL 750.520h. In any event, to some extent, HB's testimony was corroborated insofar as defendant admitted to sexual acts involving HB; that is, he admitted to police that he masturbated over HB. There is no merit to defendant's unreliability claim. Sixth, there was a need for evidence beyond SB's testimony because there was a lack of physical evidence and there were no eyewitnesses to corroborate SB's description of events. See *Solloway*, 316 Mich App at 196; *People v Duenaz*, 306 Mich App 85, 100; 854 NW2d 531 (2014).

Ultimately, HB's other-acts evidence was damaging to defendant, but it was not unfairly prejudicial, and it was highly probative of defendant's propensity for sexually assaulting young girls. Moreover, the trial court gave the jury a limiting instruction on the use of other-acts

evidence. See *Duenaz*, 306 Mich App at 100. On these facts, the trial court did not abuse its discretion by admitting HB's other-acts testimony under MCL 768.27a to demonstrate defendant's likelihood of sexually penetrating SB.[2]

## II. PROSECUTORIAL MISCONDUCT

Next, defendant argues that the prosecutor committed misconduct by vouching for SB's credibility during closing arguments and denigrating defendant by referring to his "warped, twisted little mind." Defendant failed to object to these remarks at trial and failed to request a curative instruction. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). As a result, defendant's claims of prosecutorial misconduct are unpreserved and reviewed for plain error affecting defendant's substantial rights. See *id*. We conclude that defendant has not shown plain error.

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). The propriety of a prosecutor's remarks depends on the facts of each case, so a prosecutor's remarks must be read as a whole and evaluated in context in light of defense arguments and the evidence admitted at trial. *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *Dobek*, 274 Mich App at 66. However, prosecutors "must refrain from denigrating a defendant with intemperate and prejudicial remarks." *People v Bahoda*, 448 Mich 261, 283; 531 NW2d 659 (1995). Prosecutors must also refrain from vouching for a witness's credibility by suggesting that the prosecutor has some "special knowledge" of the witness's truthfulness. *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). Nevertheless, a prosecutor may comment on witness credibility during closing arguments and argue, based on the evidence, that a witness is worthy of belief. *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005); *Thomas*, 260 Mich App at 455.

In this case, defendant contends that the prosecutor vouched for SB's credibility by arguing that SB had no reason to lie, that she did not dislike defendant, that she gained nothing by disclosing the abuse, and that there was no reason that SB's mother would instruct SB to lie.

---

[2] Defendant makes a cursory due-process argument on appeal, asserting that due process was violated by the admission of irrelevant and unduly prejudicial testimony. However, as discussed, HB's testimony was relevant and not unfairly prejudicial. Defendant's claim to the contrary is premised on the belief that propensity evidence is irrelevant and inadmissible; but, defendant is mistaken. Propensity evidence is relevant and admissible under MCL 768.27a, *Solloway*, 316 Mich App at 193; and defendant was protected from the risk of unfair prejudice by application of the MRE 403 balancing test, *Watkins*, 491 Mich at 456 n 2. There was no evidentiary error, and defendant has not shown a constitutional violation based on the proper admission of this other-acts evidence. See *People v Gaines*, 306 Mich App 289, 303 n 9; 856 NW2d 222 (2014) ("Defendant's claim that the admission of other-acts evidence violates due process is moot because the admission of the evidence was subject to the MRE 403 balancing test.").

-4-

But what defendant attempts to characterize as improper vouching is simply permissible argument regarding witness credibility. The prosecutor did not suggest any special knowledge of SB's truthfulness. See *Thomas*, 260 Mich App at 455. Instead, the prosecutor simply argued that, based on the evidence, SB had no reason to lie. The prosecutor did not commit misconduct by arguing that SB was worthy of belief, so defendant has not shown plain error.

Defendant also argues on appeal that the prosecutor impermissibly denigrated him by referring to defendant's "warped, twisted little mind." The prosecutor made this comment during rebuttal, in response to an argument by defense counsel relating to the significance of videos deleted from defendant's phone. During closing arguments, defense counsel attempted to counter the assertion that defendant had deleted video of SB from his phone by emphasizing that officers found indecent photographs of children on his phone, and arguing that it would not "make sense" for defendant to "nefariously" delete video but not delete the pictures. In response, during rebuttal, the prosecutor made the following argument:

> The next thing I want to touch base on is defense counsel said, why delete the video—we're talking about the video that [SB] saw of herself where the defendant was putting his finger in her butt—but not delete the pictures that you saw during trial. Well, because the video that [SB] saw herself in, involved penetration, and somewhere in the *defendant's warped, twisted little mind*, once there was penetration, which is what's shown on the video, that's when it became illegal in his mind. That's when it became forbidden.
>
> The pictures, he was willing to somehow minimize in his brain as being okay, he would keep them as a souvenir so he could look back on them, so that he could get off on them, or whatever it was that he wanted from those. But somehow, that video, that's when it became forbidden, and that's when it got deleted. . . . [Emphasis added.]

Considering the prosecutor's reference to defendant's "warped, twisted little mind" in the context of defense counsel's arguments and the evidence presented at trial, *Callon*, 256 Mich App at 330, defendant has not shown plain error. The prosecutor's response to defense counsel's argument was essentially that defendant's conduct was not that of someone who was acting in a way that made sense. Instead, the prosecutor argued that, in defendant's "warped, twisted little mind," he saw a distinction between masturbating over children and penetrating children, and he kept the photographs that showed masturbation because he wanted a souvenir. Although the prosecutor's remark was harsh, the prosecutor was not required to confine her arguments to the blandest possible terms. *Dobek*, 274 Mich App at 66. Also, even if the remark was intemperate, the remark was brief and isolated, and any prejudice resulting from the remark could have been cured with a jury instruction. See *People v Watson*, 245 Mich App 572, 591-592; 629 NW2d 411 (2001). Indeed, the trial court instructed the jury that it must decide the case "based only the evidence," that the "lawyers' statements and arguments" were not evidence, and that they "must not let sympathy or prejudice influence [their] decision." See *id*. at 592. In these circumstances, defendant has not shown that the prosecutor's isolated remark affected the outcome of the proceedings, and he is not entitled to a reversal of his conviction.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that defense counsel provided ineffective assistance at trial by informing the jury during opening statements that defendant would testify and then failing to call defendant as a witness at trial. In a Standard 4 brief, defendant also argues that counsel provided ineffective assistance by failing to investigate and call witnesses, retain a medical expert, and arrange for defendant to receive a polygraph examination. These arguments are without merit.

Defendant failed to move the trial court for a new trial or a *Ginther*[3] hearing, so defendant's ineffective claims are unpreserved. See *People v Sabin (On Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Our review of unpreserved ineffective assistance claims is limited to mistakes apparent from the record. *People v Thorne*, 322 Mich App 340, 347; 912 NW2d 560 (2017). "To establish ineffective assistance of counsel, defendant must show (1) that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

Defendant first argues that defense counsel provided ineffective assistance by telling the jury that defendant would testify and then not fulfilling this promise during trial. Relevant to this argument, several federal circuit courts have concluded that defense counsel's performance may fall below an objective level of reasonableness when defense counsel mentions expected testimony in an opening statement and then fails to present that testimony during trial. See, e.g., *United States ex rel Hampton v Leibach*, 347 F3d 219, 257 (CA 7, 2003); *Ouber v Guarino*, 293 F3d 19, 28 (CA 1, 2002).[4] The failure to produce promised testimony has been considered particularly troubling when it is the defendant whose promised testimony fails to materialize during trial. *Hampton*, 347 F3d at 257.

> When a jury is promised that it will hear the defendant's story from the defendant's own lips, and the defendant then reneges, common sense suggests that the course of trial may be profoundly altered. A broken promise of this magnitude taints both the lawyer who vouchsafed it and the client on whose behalf it was made. [*Ouber*, 293 F3d at 28.]

Nevertheless, failure to produce testimony mentioned during opening statements does not always rise to the level of ineffective assistance of counsel. See *id*. at 27. In terms of counsel's performance, the decision to change strategy and to not call a previously mentioned witness may

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] "Lower federal court decisions are not binding on this Court, but may be considered on the basis of their persuasive analysis." *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013).

be a reasonable strategic decision depending on the facts of the case, particularly if there are unforeseen occurrences during trial that prompt the change in strategy. See *Hampton*, 347 F3d at 257. Moreover, even if counsel's unfulfilled promises during opening statement amount to deficient performance, a defendant must still show prejudice. See *Jackson*, 292 Mich App at 600-601. In the context of defense counsel's unfulfilled promise to call a defendant to testify, courts have concluded that a defendant has not shown prejudice when, for example, the testimony that the defendant could have offered was otherwise presented to the jury (as through a video interview), the defense counsel addressed the defendant's failure to testify during closing argument, and the jury was specifically instructed not to use the defendant's failure to testify against him. See *Thompson v Rapelje*, 839 F3d 481, 485 (CA 6, 2016).

Here, during opening statements, defense counsel led the jury to believe that defendant would be taking the stand to testify and that, when he did so, defendant would take responsibility for the acts depicted in the photographs while denying that he had sex with SB. Defendant did not testify at trial, and defendant contends on appeal that there were no unforeseen circumstances that would reasonably justify defense counsel's failure to fulfill the promise made in his opening statement.[5] However, in the absence of a *Ginther* hearing, we cannot conclude that defense counsel's decision was outside the range of professionally competent assistance. See *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). Defense counsel could have concluded that the testimony of other witnesses developed differently than expected or perhaps defendant expressed new reservations about testifying that affected defense counsel's advice on the decision to testify notwithstanding counsel's remarks during opening statements. On the record presented, defendant has not overcome the presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. (quotation marks and citation omitted).

Moreover, even if we were persuaded that defense counsel's performance fell below an objective level of reasonableness, defendant's ineffective assistance claim would still fail because he cannot show prejudice. Although defendant did not testify, this is not a case where defense counsel left his promise to the jury completely unfulfilled. That is, while defendant did not testify, the jury was still able to hear defendant's version of events, to some extent, as they were recounted during the police interrogation in which defendant admitted his wrongdoing in the photographs while largely denying any actual sexual contact with SB.[6] See *Thompson*, 839

---

[5] We note that the real question in this case is not whether defendant should have been called to testify, but whether defense counsel provided ineffective assistance by making a promise to the jury during opening statements that he did not fulfill during trial. To the extent defendant argues that counsel should have called him as a witness, the record shows that, after discussing the matter with counsel, defendant knowingly waived his right to testify. There is no reason to suppose that counsel's advice was not a matter of trial strategy, and defendant cannot establish ineffective assistance based on his decision not to testify. See *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991).

[6] Defendant eventually admitted to sexually penetrating SB's vagina with his finger, but he never confessed to the acts of sexual penetration described by SB.

F3d at 485. Also, this is not a case where defense counsel reneged on his promise that the defendant would testify "without explaining to the jury why he did so." See *Hampton*, 347 F3d at 257. To the contrary, defense counsel expressly addressed defendant's failure to testify during closing arguments. In doing so, defense counsel reminded the jury that they could not hold defendant's decision not to testify against him, defense counsel asserted that whatever advice he gave to defendant about testifying was defense counsel's counsel responsibility, and defense counsel emphasized that defendant's repeated denials "since day one" were apparent from the police interview, effectively giving the impression that defense counsel made the decision not to call defendant simply because defendant's version of events had been presented to the jury. By addressing the matter and drawing the jury's attention to defendant's denials in the police interrogation, defense counsel alleviated the prejudice resulting from his remarks during opening statements.

Defendant's prejudice argument paints this case as a credibility contest in which his testimony could have tipped the scales, but he ignores that there was evidence of his guilt besides SB's testimony, including HB's other-acts evidence, defendant's admission that he penetrated SB's vagina with his finger, and the photographs found on defendant's phone. In contrast to this evidence of defendant's guilt, there is no indication that defendant's testimony would have aided his case; and, if had he testified, he would have been subject to potentially damaging cross-examination. See *Thompson*, 839 F3d at 485. We also note that any minimal prejudice to defendant was alleviated by the trial court's instructions to the jury that they could not consider defendant's failure to testify against him and that defendant's decision could not affect their verdict in any way. "Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017). In sum, defendant has not established that he was denied the effective assistance of counsel in this instance, and he is not entitled to a new trial on this basis.

In his Standard 4 brief, defendant argues that counsel was ineffective for failing to investigate and call witnesses, retain a medical expert, and arrange a polygraph examination for defendant. "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Decisions regarding what arguments to make and what witnesses to call, including what experts to call, are presumed to be matters of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Defendant first asserts that defense counsel failed to conduct a proper investigation and, in particular, failed to speak with witnesses who could have verified defendant's assertion that SB fabricated allegations of sexual abuse because she was no longer allowed at defendant's home due to her bad behavior. However, the record is devoid of any evidence showing that these unidentified witnesses exist, that their testimony would have benefited defendant, or that defendant told defense counsel about these witnesses. In these circumstances, defendant has not established the factual predicate of his assertion that counsel was ineffective in failing to investigate and call these witnesses, and absent some evidence of how these witnesses would have testified, there is no basis for concluding that their testimony would have affected the outcome of the proceedings. See *Carbin*, 463 Mich at 600-601; *Putman*, 309 Mich App at 248-249. Thus, defendant has not shown that he was denied the effective assistance of counsel.

Defendant also contends that defense counsel was ineffective for failing to retain a medical examiner as an expert witness for the defense. However, on the available record, there is no indication that defense counsel did not reasonably investigate the possibility of an expert, and there is no reason to suppose that counsel's failure to call an expert was not a matter of sound trial strategy. See *Payne*, 285 Mich App at 190. Moreover, even assuming an expert could have been retained, without some indication that an expert could have provided testimony favorable to defendant, defendant cannot show that he was prejudiced by defense counsel's failure to procure and call an expert witness. See *id*. Thus, defendant cannot show that counsel was ineffective by failing to investigate or call an expert witness.

Finally, defendant argues that he was entitled to a polygraph and that counsel provided ineffective assistance by failing to arrange a polygraph examination. Defendant is correct that an individual accused of CSC-I shall be given a polygraph examination if he requests it. See MCL 776.21(5). However, there is no record support for defendant's assertion that he told defense counsel he wanted a polygraph, so defendant has not established the factual predicate of his claim. See *Carbin*, 463 Mich at 600. Moreover, there is no evidence that defendant could have passed a polygraph. And in any event, polygraph evidence would not have been admissible at trial, *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003), and defendant offers no other explanation as to how a polygraph could have affected the outcome. Thus, defendant cannot show prejudice, and his ineffective assistance claim must fail.[7]

## IV. SENTENCING

In his last issue, defendant argues that the trial court abused its discretion by departing from the applicable guidelines range and mandatory minimum to sentence defendant to a minimum of 35 years' imprisonment. Defendant maintains that the sentence imposed was unreasonable and violated his right to a proportionate and individualized sentence. We disagree.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). We review the reasonableness of a departure sentence for an abuse of discretion. *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). "[T]he relevant question for appellate courts reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (quotation marks and citation omitted).

---

[7] In his Standard 4 brief, defendant asks us to remand the case for a *Ginther* hearing so that he can develop an evidentiary record in support of his unsubstantiated ineffective assistance claims. Defendant makes this request in the text of his Standard 4 brief as opposed to filing a proper motion for remand as required by MCR 7.211(C)(1), and his motion is therefore denied. See *People v Bass*, 317 Mich App 241, 276 n 12; 893 NW2d 140 (2016). We also note that defendant fails to provide a supporting affidavit or other offer of proof regarding the facts to be established at the hearing, which provides an additional basis for denying defendant's request for a *Ginther* hearing. See MCR 7.211(C)(1).

When a trial court imposes a sentence that exceeds the now-advisory legislative guidelines range, the sentence imposed must be reasonable. *Lockridge*, 498 Mich at 392. A sentence is reasonable if it adheres to the principle of proportionality. *Walden*, 319 Mich App at 351. Under the principle of proportionality, the trial court "must take into account the nature of the offense and the background of the offender" to assure that the sentence imposed is "proportionate to the seriousness of the matter." *People v Steanhouse*, 500 Mich 453, 472; 902 NW2d 327 (2017) (quotation marks and citation omitted). Although the legislative guidelines remain a "useful tool" that must be taken into account when sentencing a defendant, *Dixon-Bey*, 321 Mich App at 524, "[a] departure sentence may be imposed when the trial court determines that the recommended range under the guidelines is disproportionate, in either direction to the seriousness of the crime," *People v Rosa*, 322 Mich App 726; 913 NW2d 392 (2018) (quotation marks and citation omitted). "[A] trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Dixon-Bey*, 321 Mich App at 525 (quotation marks and citation omitted).

> Factors that may be considered by a trial court under the proportionality standard include, but are not limited to:
>
> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Walden*, 319 Mich App at 352-253 (quotation marks and citation omitted).]

In this case, the applicable range under the advisory legislative guidelines was 126 to 210 months' imprisonment. However, defendant was subject to a mandatory 25-year minimum under MCL 750.520b(2)(b). The prosecution requested a minimum term of 40 years. Although the trial court did not adopt the prosecution's recommendation, the trial court imposed an upward departure sentence by exceeding both the mandatory minimum and the applicable guideline range and sentencing defendant to a minimum term of 35 years' imprisonment. At sentencing, the trial court provided a detailed justification for the specific sentence imposed. Briefly summarized, the trial court concluded that the sentence of 35 years' imprisonment was warranted given: (1) the seriousness of the offense as represented by the multiple acts of penetration and the filming of defendant's acts, (2) defendant's relationship with SB insofar as he groomed an entire family and abused the trust placed in him by SB's mother in order to carry out his misdeeds, and (3) the need to protect children from defendant as well as defendant's lack of potential for reform.

As the trial court's articulation of its reasons for the sentence imposed adequately explained why the imposed sentence was more proportionate than a sentence within the guidelines would have been, see *Dixon-Bey*, 321 Mich App at 525, we conclude that the trial court did not abuse its discretion by departing from the 25-year mandatory minimum and sentencing defendant to a minimum of 35 years' imprisonment. First, with regard to the seriousness of the offense, the present case involves a heinous offense—sexual penetration of a child under the age of 13—made worse by the multiple acts of penetration involved. But

defendant not only sexually penetrated the minor victims, but he also photographed the girls while they slept and he masturbated over their heads. SB even found video of herself on defendant's cell phone being sexually penetrated while she slept. Obviously, any sexual penetration of a young child is a very serious crime, but the trial court identified factors that made defendant's offense particularly egregious—namely, the multiple instances of sexual penetration and defendant's decision to document his crimes with video and photographs of his actions. That the sentencing guidelines did not adequately reflect the seriousness of defendant's offense was a proper consideration by the trial court, and it supports that a departure sentence was more proportionate than a sentence within the guidelines would have been. See *id*. at 525 n 10 (discussing that a proper reason for departing from the guidelines under the principle of proportionality is if the guidelines do not adequately account for the seriousness of the offense).

Second, the trial court considered defendant's relationship to SB, emphasizing that defendant was in a position of trust because of his relationship with SB's mother. Indeed, the trial court concluded—based on the evidence—that defendant had groomed the entire family by preying on a single mother who was struggling financially and by using his friendship with her to gain access to SB in order to sexually assault SB in the privacy of his basement. There is certainly record support for the trial court's conclusions. At trial, SB's mother described her financial difficulties, admitting that she had sex with defendant in exchange for money because she needed money for her children. She also testified that she allowed the girls to visit defendant because she needed a "break." As a result of his friendship with SB's mother, defendant was known as "Uncle Erik" to the girls and he was HB's godfather. Yet he betrayed this trust and sexually assaulted SB under the guise of offering a fun and safe place for the girls to spend time. As discussed by the trial court, defendant's abuse of this position of trust has greatly impacted the girls. In this regard, at the sentencing hearing and in the victim impact statement, SB's mother described the hurt caused to the entire family because defendant betrayed her trust in him. Defendant's position of trust in SB's life was not accounted for by the guidelines, see *Walden*, 319 Mich App at 352-253, and his damage to an entire family as a result of his abuse of that trust was not adequately accounted for by the guidelines, see *Rosa*, 322 Mich App at 748. Thus, these circumstances were properly considered by the trial court.

Third, the trial court concluded that all children needed to be protected from defendant and that defendant had little chance for rehabilitation given the unlikelihood of defendant quelling his "aberrant tendencies." Relevant to the trial court's view of defendant's likelihood of reform, the record shows that defendant preyed on an entire family and engaged in multiple acts of sexual penetration with two young girls while photographing and filming his actions. In his confession to police and his statements reported in the presentence investigation report, defendant justified his sexual penetration of a child by stating that he was "sexually charged" and "feeling frisky." He also blamed his actions on the use of drugs and alcohol, and he even attempted to blame SB's mother by asserting that she placed him in a "predicament" by having him watch the girls and that she never should have let the girls come over to his house. In short, the record amply demonstrates that defendant is unable—or unwilling—to control his behavior and to "quell his aberrant tendencies," which supports the trial court's conclusion that defendant poses an ongoing danger to children and that there is little chance of him reforming his behavior.

With regard to the extent of the departure, the trial court departed 10 years from the mandatory minimum, which was a 40% increase from the mandatory minimum. However, the

35-year sentence was still less than the 40 years requested by the prosecutor. See *Walden*, 319 Mich App at 354-355 (comparing extent of departure to sentence requested by prosecution when determining whether the extent of departure violated principle of proportionality). Moreover, in imposing the particular sentence in question, the trial court expressly acknowledged—and was thus clearly aware of—the importance of individualized sentencing tailored to the particular case and the particular defendant, and the trial court articulated reasons why the specific sentence imposed was more reasonable than the mandatory minimum and the applicable guideline range. See *id*. at 355.

Overall, considering the seriousness of the offense and defendant's background, the 35-year minimum sentence was proportionate to the seriousness of the circumstances surrounding the offense and the offender. Accordingly, the sentence imposed by the trial court did not violate the principle of proportionality, and the trial court did not abuse its discretion by sentencing defendant to 35 to 60 years' imprisonment. Because the sentence is not unreasonable, defendant is not entitled to resentencing. See *Lockridge*, 498 Mich at 392.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood